UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ALBUQUERQUE VALET
PARKING SERVICE, et al.**,

    Plaintiffs,

    v.                                  **CIV. NO. 03-575 ACT/LFG**

**FEDERAL AVIATION
ADMINISTRATION**,

    Defendant.

**CITY OF ALBUQUERQUE,**

    Intervenor.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is an appeal from a decision of the Federal Aviation Administration ("FAA"). The FAA in its Final Agency Decision and Order of August 2, 2002 found that Plaintiffs Norma Morris and David Powdrell ("Plaintiffs") failed to substantiate that the City of Albuquerque ("City") discriminated against them on the basis of sex and race when the City did not award a valet parking contract to their firm, Albuquerque Valet Parking Service ("AVPS"). Plaintiffs filed their appeal of this decision in the Tenth Circuit. The Tenth Circuit transferred this matter on May 12, 2003.

Jurisdiction.

On March 19, 2004, FAA filed a Notice of Statutory Change, Docket No. 27. The FAA informed the Court that the judicial review provision in 49 U.S.C. §46110(a) had been amended on

December 12, 2003. The amendment changes the jurisdiction of this matter to the Tenth Circuit Court of Appeals. Thus, the issue is whether this Court has jurisdiction at this time. For the following reasons, the Court concludes that it does have jurisdiction.

There is a general presumption against retroactivity of statutes. However, the Courts recognize that new jurisdictional or procedural rules "usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" *Hughes Aircraft Company v. United States*, 520 U.S. 939, 951 (1997) citing *Landgraf v. USA Film Products*, 511 U.S. 244, 274 (1993). However, a new jurisdictional rule does not apply to every pending case. *Landgraf*, 511 U.S. at 275 ( "A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime..."). Retroactive effect cannot be given unless "such construction is required by explicit language or by necessary implication." *Landgraf,* 511 U.S. at 274. The text of the amendment states that "this Act and the amendments made by this Act shall apply only to fiscal years beginning after September 30, 2003." P.O. 108-176, 117 Stat. 2490, §3. There is no clear legislative intent to apply the new jurisdictional statute to pending cases. Moreover, this case was transferred to this Court from the Tenth Circuit Court of Appeals on May 12, 2003 pursuant to the prior jurisdictional statute.

Facts.

In December of 1998, Plaintiffs met with various city representatives to propose a valet parking service at the airport. In January of 1999, Plaintiffs continued to meet with city officials regarding their proposal. Plaintiffs assert that they received a boilerplate copy of the Albuquerque

International Sunport Operating Agreement for Commercial Ground Transportation Vehicles and Albuquerque International Sunport's Lease Master Records.  On January 21, 1999, Plaintiffs sent letters to Jay Czar, Director of Aviation, and Dewey Cave, Project Manager, requesting "to begin negotiations of a contract with the Albuquerque International Sunport under the Operating Agreement for Commercial Ground Transportation Vehicle in reference to our business."  Exhibit 1A, Bate stamp 81.

In February of 1999, another entity, Airport Valet Inc. ("AVI"), approached the City with a proposal to provide valet parking services at the airport.  On March 9, 1999, Plaintiffs met with city officials with the intent to discuss both location and negotiations.  Plaintiffs state they received a draft Albuquerque Valet Parking Terminal Building Concession Agreement.

Based on the interest of two vendors, the City determined that the best way to select a valet parking service vendor was by competitive bid.   On May 4, 1999 the City issued a Request for Bid ("RFB").  The RFB stated in part that:

> "Award shall be based on the highest offer over 6% of Gross Revenues of $15,000 minimum annual guarantee; whichever is greater (exclusive of amounts paid for lease of curbside space)".

 Exhibit 1E, Bate stamp 267.

On May 13, 1999, the City sent a letter to the Plaintiffs, stating, that "there will not be any local or state preferences applied to this bid," and "please note that the award will be given to the Highest amount to the City of Albuquerque as this is a concession bid."  Id. at Bate stamp 324.

AVPS and AVI submitted bids.  AVPS bid was $16,000 or 7% of gross receipts.  Exhibit E, Bate stamp 363. AVI's bid was $60,000 and 7% of gross receipts. Id.  On or about June 22 and 23,

1999 the City awarded the contract to AVI. On June 30, 1999, Plaintiffs filed two letters of protest. On July 14, 1999, the City sent a letter to the Plaintiffs stating that "[t]he award was made to Airport Valet Inc., as their offer of revenues was the highest offer per Specification, L., Part IV, page 2 of the RFB." Id. at Bate stamp 381. On September 20, 1999, the City Council approved the Terminal Building Concession Agreement with AVI.

Standard of Review.

The court's review is governed by the Administrative Procedures Act, 4 U.S.C. § 706(2)(A), which authorizes the court to set aside an agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The duty of a court reviewing agency action under the "arbitrary or capricious" standard is to determine whether the agency examined the relevant evidence and articulated a rational connection between the facts found and the decision made. Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983); Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1574 (10th Cir. 1994). An agency's factual determinations will be set aside only if they are unsupported by substantial evidence. "The substantial-evidence standard does not allow a court to displace the [Agencies'] 'choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" Trimmer v. United States Dep't. of Labor, 174 F.3d 1098, 1102 (10th Cir. 1999). The Plaintiff bears the burden of proof that an agency's factual determinations are not supported by the substantial evidence. Bishop v. Veneman, 283 Supp.2d 1207 (D. Kan. 2003)

Procedural History.

Pursuant to 14 C.F.R. §16, Plaintiffs filed a complaint with the FAA on December 27, 2000 claiming discrimination the basis of sex and race in the award of a contract for valet parking services

4

at the Albuquerque International Airport by the City. The Plaintiffs and the City were given the opportunity to submit written documents and argument concerning the appeal. The FAA requested and received additional information from the City concerning the award of the contract and background information.

Authority for the initial Director's Determination was delegated to the Deputy Assistant Administrator for Civil Rights at FAA. The Deputy Assistant Administrator for Civil Rights at FAA issued the initial Director's Determination on February 11, 2002. The Director's Determination concluded that Plaintiffs "failed to prove that the City discriminated against them on the basis of sex (female) and race (African-American) in violation of 49 CFR 26.7 and 49 CFR 23.93(a) when the City did not award a valet parking contract to their firm." Exhibit 19.

Plaintiffs sought review of that determination by the FAA's Assistant Administrator for Civil Rights, who had been delegated final authority on this matter. After further opportunity for written submissions, the FAA's Assistant Administrator for Civil Rights issued a Final Agency Decision and Order on August 2, 2002. The Final Agency Decision upheld the initial determination. Plaintiffs filed their petition for review with the Tenth Circuit Court of Appeals on October 2, 2002. The Tenth Circuit transferred the matter to this Court by Order entered May 2, 2003. This matter was placed on the administrative track. The City was permitted to intervene. The Agency record was filed with the Court on August 18, 2003.

Statutory Framework.

The City, as the airport sponsor, has received grants for the planning and development of the airport which are financed, in part, with funds provided by the FAA under the Airport Improvement Program ("AIP") 49 U.S.C. §47101 et seq. As a recipient of federal AIP funds, the City was subject

5

to the requirements of the Disadvantaged Business Enterprise ("DBE") regulations of the Department of Transportation.  49 C.F.R. §§23 and 26.

Plaintiffs allege that the City violated federal regulations for airport concessions in discriminating against them on the basis of sex and race.

49 C.F.R. §26.7 states that as sponsors:

> (a)  You must never exclude any person from participation in, deny any person the benefits of, or otherwise discriminate against anyone in connection with the award and performance of any contract covered by this part on the basis of race, color, sex, or national origin.
> (b)  In administering your DBE program, you must not, directly or through contractual or other arrangements, use criteria or methods of administration that have the effect of defeating or substantially impairing accomplishment of the objectives of the program with respect to individuals of a particular race, color sex or national origin.

49 C.F.R. §23.93 states the requirements for airport sponsors with respect to airport concessions:

> "(a)  *General Requirements*.  (1)  Each sponsor shall abide by the non-discrimination requirements of 26.7 with respect to the award and performance of any concession agreement covered by this subpart.  (2)  Each sponsor shall take all necessary and reasonable steps to foster participation by DBEs in its airport concession activities."

Clearly, the regulations prohibit discrimination on the basis of sex or race or the use of criteria or methods that would have the effect or defeating or substantially impairing the objectives of the DBE concessions program with respect to race, color, sex or national origin.

Discussion.

The essence of Plaintiff's appeal is that the FAA erred in finding that the City did not discriminate against them on the basis of sex and race and did not violate  49 C.F.R. §§26.7 and 23.93(a) in awarding the valet parking contract to AVI.

A review of the Director's Determination and the Final Agency Decision and Order demonstrates that the decision was not arbitrary or capricious and substantial evidence supports the FAA's determination. The FAA developed an extensive factual record including submissions from the parties and requests for additional information from the City. In the Director's Determination the Deputy exhaustively reviewed the facts in the record. The Deputy reviewed the applicable law. She analyzed the discrimination claims under the intentional discrimination/disparate treatment approach and the disparate treatment/adverse effect approach. The Deputy applied the appropriate law. Furthermore, in the Final Agency Decision and Order the Assistant Administrator completed an extensive analysis of the facts and claims of discrimination against the City under both intentional discrimination and disparate treatment claims.

Plaintiffs do not argue or demonstrate that the facts relied on by the FAA were not correct. Nor do Plaintiffs argue or demonstrate that the FAA relied on the wrong law. Rather, Plaintiffs make rather imprecise allegations which are not supported by the record. For instance, Plaintiffs make the statement that FAA was in "non-compliance in the enforcement of their Federal Rules and Regulations pertaining to the Disadvantaged Business Enterprise (DBE) grant assurance at the Albuquerque International Sunport (Airport)!" Brief-in-Chief, p. 4. However, Plaintiffs do not argue the facts, rules or regulations governing the DBE program. Plaintiffs make no showing that FAA operated the program in a discriminatory manner or used discriminatory methods of administration.

Plaintiff alleges that the City had no interest in promotion of local minority and women business enterprises. As the Final Agency Decision and Order notes, this is contrary to the information contained in the City's annual DBE Concession Accomplishments Reports for fiscal year 1999 and 2000. The report demonstrate that of the ten DBE concessions at the airport, Hispanics

males own six, Hispanic females own three, and a non-minority female owns one.

Similarly Plaintiffs allege that the City failed to meet the DBE goal. Again, the DBE Concession Accomplishment Reports for fiscal years 1999 and 2000 show otherwise. The City stated in it's letter to the FAA on January 15, 2000 that "[a] 12.30% DBE participation was accomplished for this reporting period against an established 10% DBE participation goal." Exhibit 13. In the City's letter to the FAA in June of 2001, it stated that "[a] total of 13.3% participation was accomplished for this reporting period compared to 12.3% for the previous reporting period for an increase of 1% DBE participation over the previous fiscal year.." Id.

Plaintiffs allege that the FAA relied on incomplete statistical evidence. A review of the Director's's Determination and the Final Agency Decision and Order demonstrates that Plaintiffs are simply wrong. The Deputy reviewed the issues in the complaint, including Plaintiffs' claim of intentional discrimination. The Deputy correctly analyzed this claim under the Title VII burden shifting analysis framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 at 802 (1973). The Deputy correctly found that the Plaintiffs were members of a protected class (female and African-American); they applied for and were eligible for a valet parking service concession at a federally funded airport which is covered by the DBE concessions program; they were not selected; and the City selected AVI who also met the qualification requirements.

The Deputy then correctly determined that after establishing a *prima facie* case of discrimination, the burden shifts to the Defendant to articulate a legitimate nondiscriminatory reason for Plaintiffs' rejection. The City has shown that the RFB stated that the award would go to the highest bidder, that AVI offered the highest amount to the City and AVI was awarded the contract. The City also provided documentation that the City was talking with both the Plaintiffs and AVI

regarding a valet service. Finally, the City offered documentation supporting their decision to only award one, not two contracts.

The next step under the McDonnell Douglas analysis is whether the City's reasons were a pretext for discrimination. The Deputy reviewed the evidence submitted by the Plaintiffs and the City. Specifically, the Deputy reviewed the Purchasing Division Monthly Contract Listing for the City of Albuquerque, the retail and restaurant section of the tenant phone list in 2001 and the DBE Concession Accomplishment Report for fiscal years 1999 and 2000. Then the Deputy went one step further and looked at the 1997 census data for retail business in the Albuquerque Metropolitan Statistical Area. The Deputy properly noted that the "analysis lacks a certain amount of accuracy because the census data is four years old and not all businesses in the [Metropolitan Statistical Area] are interchangeable for purposes of airport concessions." Exhibit 19, p. 14. The Deputy also noted that the statistical information available in the case was limited, its reliability was questionable, and it did not provide for a reliable source to determine substantial disparate treatment. Id.

The record also established that the Deputy thoroughly analyzed Plaintiffs' claims of disparate impact under 49 C.F.R. §26.7(b). Under a disparate impact theory Plaintiffs must prove that a facially neutral practice has a disproportionate adverse effect on a protected group. Lau v. Nichols, 414 U.S. 563, 568 (1974). In this case, the protected groups are females and African-Americans. To prove this claim, Plaintiffs must show a causal connection between the facially neutral policy and the disproportionate and adverse impact on females or African-Americans as a group. However the Plaintiff did not provide any statistics or evidence that would allow a comparison of similarly-situated protected and non-protected groups to identify a disparate effect. Again, the Deputy noted the 1997 Census data referred to above. Under that data, one would expect a female to own 3.1 airports

concessions, and an African-American to own .1 airport concessions. The data showed that females own four airport concessions and African-American's do not own any airport concessions. However, this fact in itself does not substantiate that the City discriminated against the Plaintiff on the basis of race. As discussed above, Plaintiffs failed in their burden to prove that the City's facially neutral practice caused a disparate effect on African-Americans.

Plaintiffs raise a number of other arguments none of which demonstrate that the FAA's decision was arbitrary or capricious. Plaintiffs' allege that the City knew that Plaintiff's business was run by a woman and a black man. They also assert that awarding Plaintiffs the contract would have given the City an opportunity to employ an "African-American/Woman DBE concession (protected Class), under 49 CFR Part 23 (DBE Concessions Program)." Brief-in-Chief, p. 6. Finally, Plaintiffs assert that the AVI closed its doors after three months. Id. at p. 8.

As discussed above, the FAA's finding that the City provided a legitimate, non-discriminatory explanation of why it selected AVI over the Plaintiff's is supported by substantial evidence. The FAA specifically found that the DBE Concession Accomplishments Reports show that the City has DBE participation from both minorities and women at the airport. The FAA properly points out in the Final Agency Decision and Order that there is nothing in the regulations or the governing authorities that compels an airport sponsor to select a DBE bidder who will provide less revenue to the airport.[1]

---

[1] In their Reply Plaintiffs state the City should have known AVI could not generate $60,000 in revenue. However, Plaintiffs did not raise this issue in their letters of protest and have offered no evidence to support this claim. However, even if the City was in error in believing AVI could comply with its bid, there is no indication the City was discriminating against the Plaintiffs on the basis of sex or race but rather was accepting the "highest" bid as request in the RFB.

10

Plaintiffs' evidence regarding the City's council meetings and that a particular Council member supported their bid does not substantiate Plaintiffs' claims of discrimination. Also, the fact that AVI closed down after three months is not relevant to the issues. Whether the City discriminated and complied with Federal DBE regulations is determined at the time of the award of the contract.

Plaintiffs also assert that the FAA erred by failing to conduct an adequate investigation, failing to request depositions and failing to request additional documents. Further, Plaintiff's assert that the FAA did not meet its deadlines in this matter. The FAA complied with 14 C.F.R. §16.29 regarding a review of a FAA decision. When an investigation is warranted pursuant to this regulation, it involves a "review of the written submissions or pleadings of the parties." Id. at 16.29(b)(1). Moreover, the Plaintiffs failed to point to any requirement that the FAA depose them or to obtain additional documents. As noted by the Assistant Administrator, the FAA may rely "entirely" on the complaint and responsive pleadings. Exhibit No. 26, Bate stamp 1518. The parties are required to file documents that they consider relevant. 14 C.F.R. §16.29. The FAA investigator did request from the City various documents it deemed necessary for a proper review of Plaintiff's allegations. Finally, the Plaintiffs could have filed a motion seeking an order from the Deputy compelling the production of documents they felt necessary to support their claim. The Plaintiff did not do so. Exhibit No. 26, Bate stamp 1519.

Plaintiffs are correct when they state that the Final Agency Decision was not issued within 60 days after the due date of a reply as required. 14 C.F.R. §16.33. It appears from the record that the Final Agency Decision and Order was issued approximately 2 ½ months after the due date. Plaintiffs have not shown any prejudice by this delay thus any error is harmless. St. Anthony Hospital v. U.S.

11

Dept. of Health & Human Services, 309 F.3d 680, 691 (10th Cir. 2002); Bar MK Ranches v. Yeutter, 994 F.2d 735, 740-741 (10th Cir 1993).

In conclusion, the Court addresses two remaining issues. The Plaintiffs appear to make new allegations and attempt to submit new documents regarding their claim. As discussed, above, the non-specific allegations are beyond the scope of the court's review. The Court is limited to a review of the administrative record. The Court may consider information outside the administrative record only in limited circumstances. Franklin Savings v. Director, Office of Thrift Supervision, 934 F.2d 1127, 1137 (10th Cir. 1991), *cert. denied,* 503 U.S. 937 (1992)("Where the administrative record fails to disclose the factors considered by the agency...where necessary for background information or for determining whether the agency considered all relevant factors...or where necessary to explain technical terms or complex subject matter..."). These circumstances do not exist in this matter. Plaintiffs also request that the court "dismiss" James Fitzgerald, counsel for the City, because he was involved in the underyling matter. Plaintiffs assert Mr. Fitzgerald has a conflict of interest. Plaintiffs' request will be denied.

**IT IS THEREFORE ORDERED** that the Federal Aviation Administration's Final Agency Decision is upheld and the Plaintiffs' Petition for Review and all their claims are dismissed with prejudice.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**